29 C.C.P.A. (Patents)

**In re FRANK et al.**

**Patent Appeal No. 4514.**

Court of Customs and Patent Appeals.

Dec. 1, 1941.

Daniel G. Cullen, of Detroit, Mich., for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims—Nos. 4 to 7, inclusive, 9, 11, 16 to 22, inclusive, 24, 27, 28, and 29—in appellants' application for a patent for an alleged invention relating to improvements in circuit breakers.

Claim 4 is illustrative of the appealed claims. It reads: "4. A circuit breaker including a movable contact, a stationary contact, a movable contact operating arm, a handle, and a latch for said arm, and a single spring for biasing the movable contact towards the stationary contact when the parts are in circuit closed position, and for biasing the movable contact away from the stationary contact when the arm is released by the latch, *the movable contact and the arm being connected directly, at a point remote from the connection of the arm to the handle, so that arm and contact move together on all breaker operations,* with said latch comprising the sole overload control for the breaker, the spring being connected to the contact operating arm free and independently of the handle, and also being operatively connected to the breaker frame, through a pawl which is held directly by the latch and through which the latch holds the arm." (Italics ours.)

The references are: Bradshaw, 773,467, Oct. 25, 1904; Wurster, 1,270,356, June 25, 1918; Anderson et al., 1,656,851, Jan. 17, 1928; Krantz, 1,726,233, Aug. 27, 1929; Thomson, 2,102,295, Dec. 14, 1937.

A circuit breaker is a switch, manually and automatically operated, for intermittently opening and closing an electric circuit. It includes a movable contact, an operating mechanism so constructed as to cause the movable contact to move to and from a stationary contact thereby intermittently opening and closing an electric circuit, and an arrangement for connecting the movable contact to the operating mechanism.

The appealed claims relate to an arrangement for connecting the movable contact to the operating mechanism "at a point [as stated in each of the claims] remote from the connection of the arm to the handle [of the operating mechanism],

so that arm and contact move together on all breaker operations."

The operating mechanism to which appellants' movable contact is designed to be connected is disclosed and claimed in the reference patent to Thomson. (It may be stated at this point that the Thomson patent not only discloses the operating mechanism to which appellants' movable contact is arranged to be attached, but also discloses the invention defined by the appealed claims. This requires explanation. It appears from the record that as originally filed the application which matured into the Thomson reference patent was filed as a joint application by appellants and Thomson. Thereafter, appellants disclaimed the invention disclosed in that application so far as it related to the operating mechanism, but claimed that they were the inventors of the arrangement by which the movable contact was connected to such operating mechanism. Thereafter, a patent was issued to Thomson for the operating mechanism disclosed in that application.)

Appellants' involved application was filed September 14, 1939, as a substitute for, or a division of (it is not important which, so far as the issues here are concerned), a prior application, Serial No. 59,631, filed January 17, 1936. No claim is made in this case that Thomson was the inventor, joint or otherwise, of the arrangement for connecting appellants' movable contact to the Thomson operating mechanism. Owing to the fact that the Thomson patent issued with a full disclosure of appellants' alleged invention—the arrangement for connecting the movable contact to the operating mechanism—and as the Thomson patent and appellants' application are owned by a common assignee, the record in the instant case is somewhat complicated and involved. However, the Solicitor for the Patent Office and counsel for appellants have simplified matters by pointing out that the issue determined by the Patent Office tribunals, and the sole issue here is whether appellants' structure and its connection to the Thomson device, as defined by the appealed claims, involves invention over claims 9 to 15, inclusive, in the Thomson reference patent in view of the other references of record. Why the Thomson patent was permitted to issue with a disclosure of appellants' alleged invention, is not explained. It is stated, however, in the brief of counsel for appellants, and not denied by the Solicitor for the Patent Office, that the patentee Thomson secured a reissue of his patent subsequent to the filing in this court of the appeal here under consideration, and that the subject matter defined by the appealed claims was entirely omitted from such reissue patent.

Claim 9, which is typical of claims 9 to 15 inclusive of the Thomson patent, reads: "9. In a circuit breaker, a linkage comprising parallel elongated links, a movable connection which is pivotally secured to one link and is movable along and engages the other and which connects the links, said other and engaged link being provided with resilient means disposed between an end thereof and the connection, holding means at opposite ends of said linkage for holding said linkage in normal position, and a contact operatively connected to the linkage, the linkage normally being so held by the holding means that the resilient means thereof is in a condition wherein it has potential energy stored therein, and constantly tends to vary the distance between the connection and one of the holding means and to shift the linkage, one of said holding means being manually movable, movement of that holding means releasing the linkage and permitting the resilient means to expend its potential energy and shift the linkage about the other holding means and at the same time to vary the distance between the connection and the first holding means, so as to provide a snap action movement of the linkage and a snap release of the contact."

No holding was made by either of the tribunals of the Patent Office, nor is any claim made here by the solicitor for the Patent Office, that appellants' structure or the arrangement by which it is connected to the operating mechanism of the Thomson device is defined in claims 9 to 15 of the Thomson patent. Relative to those claims, the Primary Examiner said: "Claims 9 through 15 of the patent include contacts and the *patentee Thomson must have had contacts of some kind* in mind when he invented his operating mechanism." (Italics not quoted.)

It is evident, therefore, that the Thomson patent alone is not a sufficient basis for the rejection of the appealed claims.

For the purpose of clarity, we reproduce Figs. 4 and 5 in appellants' application

822

which disclose appellants' mechanism and disclosed and claimed in the Thomson patits connection to the operating mechanism ent:

That portion of the structure as disclosed in Figs. 4 and 5 and defined in the appealed claims is described in appellants' specification as follows:

"The device includes a base 10 having a pair of contacts 11 which are to be butt pressure engaged by the contacts 12 on the ends of a resilient bridging contact arm 13. One of the contacts 11 is connected to the line, and the other is connected to one leg of the thermostatic or bimetallic warping element 14, the other leg of the latter being connected to the load. When the contact arm 13 is in 'on' position, current flows through contacts 11 and 12, contact arm 13 and warping element 14.

"To the vertically moving contact arm 13 is rigidly secured an upwardly projecting sliding link 15 and a downwardly projecting guide plate 16, these being insulated from arm 13, as shown.

"The lower end of the guide plate 16 slides between two spring jaws 17 of a lower guide block 18 firmly fastened to base 10. The sides of the sliding link 15 snugly fit into an upper guide block 19 rigidly secured to a vertical front plate 21.

"A link 22 is pivotally connected at 23 to a horizontal link 24 [the movable contact operating arm of Thomson's operating mechanism] and is slidably connected to the upper end of link 15, through an elongated slot 25 in link 15, receiving a pin 26 of link 22."

The patent to Bradshaw, as stated by the Primary Examiner, relates to a hand operated electric switch and discloses "a lost motion connection inserted between the manual operating means [the handle portion of the operating mechanism] and the contact carrying member consisting of a pin and slot connection." Although such lost motion connection may be similar to appellants' link 22, it is not used, as is appellants' link 22, to connect a movable contact and a movable contact arm of an operating mechanism.

The patent to Wurster relates to an automatic circuit breaker and discloses contacts and a resilient or bridging arm with a connection at the middle of the arm to open and close the contacts. The Wurster "movable contact" conforms substantially to appellants', except that it does not have a link similar to appellants' link 22, nor is it connected to the movable contact operating arm in the operating mechanism as is appellants'.

The patent to Anderson et al. discloses a thermostatically controlled circuit breaker capable of manual operation and a so-called "lost motion" connection between a "rock lever" or contact operating arm and a "circuit closing block" or pin. The structure disclosed in the Anderson et al. patent is entirely different from that defined by the appealed claims.

The patent to Krantz relates to a motor starting switch, and discloses a switch having a base and a pair of contacts and is similar to appellants' structure only in that the contacts are "to be butt pressure engaged by" contacts similar to appellants' contacts 12.

Counsel for appellants refer in their brief to patent No. 2,106,580 (which was made a part of the record, but was not cited as a reference), issued to the patentee Thomson for a circuit breaker, in which the *movable contact is connected to the handle of the patentee's operating mechanism*, and state that appellants' contribution to the art is the connecting of their movable contact, hereinbefore described, to the *movable contact operating arm* of the operating mechanism claimed in the Thomson reference patent, rather than to *the handle* of the patentee's operating mechanism; that appellants' arrangement not only eliminates a supplementary latch and spring disclosed in the Thomson patent No. 2,-106,580, thereby obtaining simplification of the structure, but also reduces the amount of friction existing in circuit breakers in which the movable contact is connected to the handle or operating lever of the operating mechanism, thereby securing an acceleration of circuit breaker action; and that appellants' structure and its arrangement with an operating mechanism involve invention.

It is apparent from what has been said that all of the elements disclosed in appellants' application and embraced in their structure, that is, the base 10, the pair of contacts 11 which are butt pressure engaged by the contacts 12, the resilient bridging contact arm 13, the upwardly projecting sliding link 15, and the link 22, are disclosed in the references if the patents to Bradshaw and Wurster are combined. However, there is no suggestion in the pri-

or art cited of the desirability of connecting a movable contact structure to a movable contact operating arm, rather than to the handle, of an operating mechanism.

■ Considering appellants' structure and its arrangement with an operating mechanism such as that disclosed in the reference patent to Thomson and the benefits concededly derived therefrom, we are of opinion that appellants' contribution to the art is not only of practical value, but involves invention.

For the reasons stated, we are constrained to disagree with the conclusion reached by the Patent Office tribunals. Accordingly, the decision of the Board of Appeals is reversed.

Reversed.